IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AGCS Marine Insurance Company<br><br>Plaintiff,<br><br>v.<br><br>Font Insurance, Inc., et al.,<br><br>Defendants. | Civil No. 18-1951 (GAG) |

## MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6)

**COME NOW** Font Insurance, Inc. ("Font Insurance") and Manuel F. Font-Oronoz ("Mr. Font" and together with Font Insurance, "Defendants"),[1] and request that the instant action be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### I.   INTRODUCTION

AGCS Marine Insurance Company ("AGCS") initiated this diversity action by filing a complaint against Defendants alleging negligence and breach of fiduciary duties. See Docket No. 1. AGCS's claims are predicated on the disbursement of certain insurance funds made to non-party Print One LLC ("Print One") under an insurance policy issued by AGCS. Id. According to AGCS, it disbursed the insurance proceeds to an incorrect recipient after receiving the wire-transfer information from Defendants, whose email account had been illegally hacked by an unknown party. Id. On this basis, they request a judgment against Defendants in the amount of $500,000.

AGCS's claims, however, fail for two reasons: (1) the causes of action stem from an unforeseeable criminal act as to which no liability may be imposed; and (2) Defendants owe no fiduciary duty to AGCS as a matter of fact and law. Furthermore, the

---

[1] Font Insurance is an insurance brokerage firm and Mr. Font is one of its officers.

Complaint must be dismissed against Mr. Font in his personal capacity because he worked as an officer of Font Insurance, Inc., a corporation duly registered under the laws of Puerto Rico with separate existence from that of its officers and employees. The Complaint is devoid of allegations that may warrant piercing Font Insurance's corporate veil. Therefore, there is no basis to impose any kind of liability upon Mr. Font in his personal capacity. Accordingly, and for the reasons set forth in more detail below, Defendants request that the instant case be dismissed for failure to state a claim upon which relief can be granted.

## II.   FACTUAL BACKGROUND[2]

At some point prior to October 2017, Font Insurance obtained an insurance policy through AGCS for Print One (the "the Subject Policy"). Id. at ¶ 11. Thereafter, "a loss occurred, and a claim was submitted" by Print One, which was subsequently adjusted by AGCS. Id. at ¶¶ 12-13. AGCS "then sought to finalize settlement and issue [the] settlement funds for Print One under the Subject Policy." Id. at ¶ 14. In order to do so, AGCS claims to have "relied on Defendants to act as the intermediaries between [it] and Print One, and to directly communicate with Print One regarding the settlement, including how and where to send the settlement funds." Id. at ¶ 15.

In "October 2017, [Mr. Font, in his capacity as officer of Font Insurance] provided to AGCS via e-mail the wire instruction information . . . [which] had been relayed from Print One to [Mr. Font]." Id. at ¶ 18. "Relying on the information provided by [Mr. Font], AGCS wired the first disbursement and the first partial settlement payment was successfully received by [Print One]." Id. at ¶ 19. But, according to AGCS, at some

---

[2] The facts listed in this section are taken from AGCS's well-pleaded allegations, which must be taken as true for purposes of this motion. However, Defendants reserve their right to challenge all such allegations at the proper procedural juncture.

point after the first partial settlement disbursement was made and received, Mr. Font's email security was compromised. See id. at ¶ 20.

"In December 2017 AGCS was to make a second disbursement to Print One after it received from [Mr. Font] the necessary contracts signed by the insured. As with the initial payment, AGCS relied upon Font Insurance's, and particularly on [Mr. Font's] direct communications with Print One." Id. at ¶ 22. "On December 15, 2017, at 10:08 a.m., [Mr. Font] emailed AGCS and instructed [it] to proceed to work on the" second payment. Id. at ¶ 23. On that same date, "at 12:58 p.m., AGCS responded to [Mr. Font] advising that the [payment would be made] early next week." Id. at ¶ 24. "Ten minutes later . . . [Mr. Font] thanked AGCS for the update and provided the necessary wire transfer instructions." Id. at ¶ 25.

Later that day, "AGCS received a further e-mail from [Mr. Font's] e-mail account." Id. at ¶ 26. That e-mail instructed AGCS "to disregard" the prior payment instructions and informed that new instructions would follow. Id. According to AGCS, this last e-mail was sent by the hacker using Mr. Font's account. Id. at ¶ 27. Thereafter, "[t]he new wire instructions were . . . sent from [Mr. Font's] e-mail account to AGCS." Id. at ¶ 30. "At 4:07 p.m. on December 15, 2017, the alternative wire instructions were again sent to AGCS from [Mr. Font's] e-mail account." Id. at ¶ 33. Subsequently, "AGCS wired the second partial payment in the amount of $500,000 to the alternative account that was owned or controlled by the hacker(s) and never received by the intended party." Id. at ¶ 35.

"On January 10, 2018, Font Insurance . . . communicated with AGCS about the second partial settlement payment made on December 21, 2017". Id. at ¶ 36. On that

same day, "AGCS first learned that Mr. Font's e-mail account had been hacked and the partial settlement payment in the amount of $500,000 had never been received by the intended recipient." Id.

### III.   STANDARD OF REVIEW

The legal hurdles to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) require that "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion under this rule, a complaint must plead a plausible entitlement to relief. Rodríguez-Vives v. Puerto Rico Firefighters Corps, 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe, 490 F.3d 92, 95 (1st Cir. 2007). Plausibility exists when the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged. Morales-Cruz v. Univ. of P.R., 676 F. 3d 221, 224 (1st Cir. 2012); Sepúlveda-Villarini v. Dept. of Educ. of P.R., 628 F. 3d 25, 30 (1st Cir. 2010).

The First Circuit has highlighted two working principles for the Court's Rule 12(b)(6) inquiry. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, courts should "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Vázquez v. Surrillo-Ruiz, 76 F. Supp. 3d 381, 387 (D.P.R. 2015). Legal conclusions must be supported by factual allegations. Iqbal, 556 U.S. at 679. Even then, "factual allegations may be so 'threadbare' that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied." Vázquez, 76 F. Supp. at 388

(quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595-96 (1st Cir. 2011)). Second, courts should "take the complaint's well-pled (i.e., non-conclusory, nonspeculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. at 388. In doing so, the court may "consider (a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Id. (quoting Arturet-Velez v. R. J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)). Its evaluation is contextual, calling upon courts to examine the complaint as a whole, and to separate factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited). Garcia-Catalán v. United States, 734 F. 3d 100, 103 (1st Cir. 2013); Morales-Cruz, 676 F. 3d at 224. To prevent dismissal, the factual content of the allegations must support more than a sheer possibility that a defendant has acted unlawfully. Garcia-Catalán, 734 F. 3d at 103.

## IV. DISCUSSION

### A. Puerto Rico law governs this action.

Courts sitting in diversity are bound to apply the substantive law of the forum where the action is filed. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Alejandro-Ortiz v. P.R. Elec. Power Auth., 756 F.3d 23, 26-27 (1st Cir. 2014); Servicios Comerciales Andinos, S.A., v. GE Del Caribe, 145 F.3d 463, 478 (1st Cir. 1998). Accordingly, the plausibility – or lack thereof – of AGCS's claims against Defendants must be analyzed under the applicable provisions of Puerto Rico law.

In the Complaint, AGCS sets forth claims for negligence under Puerto Rico's general tort statute, Art. 1802 of the P.R. Civil Code, 31 P.R. Laws Ann. § 5141. Pursuant to Article 1802, a person who by an act or omission causes damage to another through fault or negligence may be held liable. See Laureano Pérez v. Soto, 141 P.R. Dec. 77 (1996). In turn, Article 1057 defines the terms "fault or negligence" as "the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place. Should the obligation not state what conduct is to be observed in its fulfilment, that observed by a good father of a family shall be required." 31 P.R. Laws Ann. § 3021.

Establishing liability under Puerto Rico law requires three elements: (1) a damage suffered; (2) an act or omission caused through fault or negligence; and (3) a causal nexus between the damage and the other party's wrongful or negligent act. Torres v. K Mart Corp., 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002) (citing Cintrón-Adorno v. Gómez, 147 P.R. Dec. 576, 598-99 (1999)).

A cause of action based on an alleged omission is only actionable in cases where there is a duty to act. Elba A.B.M. v. U.P.R., 125 P.R. Dec. 294, 308 (1990) (citing II-3 J. Puig Brutau, Fundamentos de Derecho Civil 80, Barcelona, Ed. Bosch (1983)). In order to establish a claim based on negligence as a result of an omission (i) there must be a duty of care, either imposed or recognized by law, which must have been breached; and (ii) the resulting damages would have been avoided had the omitted duty been carried out. See Toro Aponte v. E.L.A., 142 P.R. Dec. 464 (1997); 1 H. Brau del Toro, Daños y Perjuicios Extracontractuales en Puerto Rico 183, San Juan, Pubs. J.T.S. (2d ed. 1986); see also Rodriguez-Quiñones v. Jimenez & Ruiz, S.E., 402 F.3d 251, 254-255 (1st Cir.

2005) ("In the case of an omission, the defendant must have been under a duty to act -- here, a duty to provide security commensurate with the circumstances attendant to their operations.") (citing Coyne v. Taber Partners I, 53 F.3d 454, 458 (1st Cir. 1995). As discussed in more detail below, AGCS's Complaint points to no law or provision suggesting that Defendants owed a particular duty to it.

Lastly, that a party's acts or omissions may be followed by harm to the plaintiff does not automatically result in the imposition of liability. Instead, the plaintiff must prove the existence of a legally-sufficient causal relation or nexus between the harm and the alleged act or omission. For such a causal relation to exist, the damage must have been foreseeable and avoidable had the omitted action been timely taken. Estremera v. Inmobiliaria Rac, Inc., 109 P.R. Dec. 852 (1980) (Official Translation). This analysis requires a finding on "when the causal relation is present and what are its limits, when can the original cause of injury be a judicial cause that by its general character appears adequate enough to have spawned the injury". Id. at 859.

**B. AGCS's cause of action based on negligence fails, as it stems from an unforeseeable criminal act under which no liability may be imposed.**

In the context of tort claims predicated on criminal conduct of a third party (i.e. not attributable to Defendants), the Puerto Rico Supreme Court has held that "a person does not have a duty to prevent an attack upon another by a third party." Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 951 F. Supp. 1028, 1036 (D.P.R. 1996), affm'd, 124 F.3d 47 (1st Cir. 1997) (citing J.A.D.M. v. Plaza Carolina Shopping Center, 1993 WL 839838 (1993)).

This general rule is embedded in the principle that an essential element of liability for fault or negligence is foreseeability, pursuant to which "the risk that must be foreseen

must be based on probabilities and not on mere possibilities." Id. at 1036 (quoting 1 H.M. Brau, Los daños y perjuicios extracontractuales en Puerto Rico, 185 (2d ed.1986)). Under this principle, a person is not "obliged to foresee all possible risks that can be conceived in a particular situation, since it then would become an absolute liability." Pacheco v. A.F.F., 112 P.R. Dec. 296, 300 [12 P.R. Offic. Trans. 367, 372] (1982). For this reason, "a defendant, even though negligent, will be relieved of liability whenever an intervening cause produces an unforeseeable result." Chapman v. E.S.J. Towers, Inc., 803 F. Supp. 571, 574 (D.P.R. 1992) (citing Widow of Andino v. W.R.A., 93 P.R. Dec. 168, 178 (1966) (emphasis added)).

"The duty of foreseeability does not extend to all the hazards imaginable which could conceivably threaten the . . . security, but to those which are *likely* to happen, and which can be anticipated by a prudent person." Hernández v. The Capital, 81 P.R. Dec. 998, 1005 (1960) (emphasis added). To determine what constitutes a reasonably-foreseeable risk, courts must resort to the judicial doctrine of the "reasonable and prudent man" as defined by the Puerto Rico Supreme Court. Ortiz v. Levitt & Sons, 101 P.R. Dec. 290 (1973).

Normally, criminal acts of third parties are not reasonably foreseeable. But the Puerto Rico Supreme Court has recognized a series of exceptions to this general rule limited to cases where, due to the specific nature of relationship between the parties, a heightened duty of care applies. See Woods-Leber, 951 F. Supp. at 1036 (citing Tormos-Arroyo v. Departamento de Instrucción Pública, 1996 WL 498870 (P.R. 1996) (Public junior high school's duty to protect students from criminals); J.A.D.M., 1993 WL 839838 (Shopping center's duty to protect patrons from criminals); Elba A.B. v. Univ. of Puerto

00625271; 1         8

Rico, 125 P.R. Dec. 294 (1990) (University's duty to protect student from criminals); Pabón-Escabí v. Axtmayer, 90 P.R. Dec. 20 (1964) (Hotel's duty to protect guests from criminals); Cruz-Costales v. Commonwealth of Puerto Rico, 89 P.R. Dec. 105 (1963) (Public high school's duty to protect students from criminals).

No such exception is present here. What is more, the Complaint is devoid of any allegations establishing or suggesting that it was foreseeable that a presumably out-of-state hacker would usurp Mr. Font's email account, provide AGCS with the incorrect wiring instructions, and thereby cause the latter to incorrectly disburse $500,000. In fact, the Complaint seems to allege the exact opposite. To that end, Defendants refer to the allegations in the Complaint asserting that (a) AGCS had engaged in effective communications via e-mail with Font Insurance and Mr. Font with respect to the settlement agreement reached with Print One; (b) AGCS issued the first payment; and (c) that payment was successfully made pursuant to Mr. Font's payment instructions. See Docket No. 1 at ¶¶ 18-19. From these allegations, it follows that Defendants had no reason to suspect, let alone foresee, that a criminal hacker would compromise the electronic communications between AGCS and Defendants. Therefore, Defendants cannot be found liable for that criminal intervention.

In the end, AGCS not only failed to expressly plead foreseeability, but also failed to plead any facts from which one could plausibly infer that the criminal act underlying its claims was likely to occur, and therefore, was reasonably foreseeable. As such, AGCS failed to plausibly plead the causal relation prong of Article 1802. See Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007) (highlighting centrality of foreseeability to a successful tort claim); Malave-Felix v. Volvo Car Corp., 946 F.2d

967, 972 (1st Cir. 1991) (noting that foreseeability serves as the "linchpin" for establishing tort liability under Puerto Rico law); Marshall v. Pérez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987) (discussing foreseeability as part of the "causal nexus" element of tort action). On this basis, dismissal of the negligence claim under Article 1802 against Defendants is warranted. See c.f. Rivera v. Cruz, 1987 J.T.S. 51 (1987) (finding no liability since defendant had no reason to anticipate the criminal act); Jacob v. Eagle Star Ins. Co., 640 F. Supp. 117 (D.P.R. 1986) (dismissing an action after finding that it was unforeseeable that plaintiff, a passenger in a taxicab which stopped at a red light next to a public housing project, would be robbed and shot).[3]

### C. AGCS's cause of action for breach of fiduciary duty must be dismissed because Defendants owed no fiduciary duty to AGCS.

For a claim for breach of a fiduciary duty to be actionable, such a duty must exist between the parties. Here, the Complaint lacks any reference to an alleged fiduciary obligation between Defendants and AGCS. To that end, the Complaint is devoid of any allegation supporting AGCS's position that Defendants purportedly owed a fiduciary duty to it. The reason is simple: pursuant to Puerto Rico insurance law, Defendants owe no such duty to AGCS.

As the Complaint concedes, Font Insurance is an insurance broker. See Docket No. 1 at ¶ 4. An "insurance broker," also referred to as a "producer," is defined under the Puerto Rico Insurance Code (the "Insurance Code") as a "person that . . . holds a license

---

[3] AGCS alleges, in a conclusory manner, that Mr. Font's email account was purportedly "unsecured." See Docket No. at ¶ 17. First, because that allegation is conclusory, the Court need not give it any weight but should instead disregard it. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (Rule 12(b)(6)'s "deferential standard does not force . . . [a] court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."). But assuming *arguendo* that such an allegation was true, the fact that the email was unsecured is insufficient to establish liability. See Chapman, 803 F. Supp. at 574 (a defendant, even though negligent, will be relieved of liability whenever an intervening cause produces an unforeseeable result.").

duly issued by the Commissioner to negotiate insurance in Puerto Rico." 26 P.R. Laws Ann. § 949a. "In negotiating insurance, **the producer shall not act as authorized representative of the insurer**, except in those cases in which an appointment made according to the provisions of § 949l of this title is involved." Id. (emphasis added). The producer works on behalf of the insured, who is his client.

In turn, an "authorized representative" is defined under the Insurance Code as "a producer that **subscribes a contract with an insurer** to negotiate insurance on his behalf, be it as employee or as independent contractor." 26 P.R. Laws Ann. § 949b (emphasis added).

Under the Insurance Code, "[n]o producer may act or state that he/she acts as authorized representative of an insurer unless there is a written contract subscribed to those effects between the latter and the insurer." 26 P.R. Laws Ann. § 949i. Consistent with this requirement, the Insurance Code further states that "[n]o producer may act as authorized representative of an insurer, unless he/she subscribes a contract with the insurer through which the insurer authorizes the producer to negotiate insurance on behalf and in representation of the insurer." Id. at § 949l(1). "The appointment of a producer as authorized representative of an insurer shall be notified to the Commissioner in the manner prescribed by the latter within the fifteen (15) days following the date on which the contract is subscribed for such a purpose." Id. at § 949l(2).

Finally, the Insurance Code **prohibits** a person from simultaneously acting as both a producer and an authorized representative. See 26 P.R. Laws Ann. § 949i(6). The distinction between producers and authorized representatives is crucial because the

former owe their duties to the insured, while the latter, to the insurer. To that end, the Insurance Code provides that producers shall fulfill the following duties:

> (1) Provide the consumer with a clear and concise orientation about the coverage, benefits, limitations and exclusions of the insurance policy negotiated by him/her, as well as about the duties and obligations of the former as insured under the same.
>
> (2) Negotiate the insurance product so it adjusts to the coverage needs the consumer seeks.
>
> (3) Identify and measure the possibility of loss.
>
> (4) Fulfill the duties imposed according to other provisions of this Code and with the principles of conduct the Commissioner may establish through rules or regulations.

Id. at § 949c. As it is clear from the foregoing, all of the producers' duties are owed ***to the insured***, not the insurer.

Conversely, the Insurance Code provides that, "[w]hen the producer acts as authorized representative of the insurer, he/she must also fulfill all those other duties imposed by the insurer by virtue of the contract subscribed between the parties." Id.

Here, the Complaint contains no allegations suggesting that Defendants are authorized representatives of AGCS. Specifically, the Complaint does not allege that Defendants and AGCS entered into a contract as required under the Insurance Code. In like manner, the Complaint fails to allege that either Defendants or AGCS notified the Office of the Insurance Commissioner of Defendants' designation as AGCS's authorized representative. Font Insurance is not an authorized representative of any insurer, but is rather an insurance producer/broker who works for Print One, LLC. In this context, Defendants cannot be considered as being authorized representatives of AGCS, and

accordingly, they did not owe any fiduciary duty to AGCS. On this basis, AGCS's claim for breach of fiduciary duties fails as a matter of fact and law.

### D. The claims against Mr. Font must be dismissed because he works as an officer of Font Insurance.

According to the Complaint, all the acts that Mr. Font undertook which ultimately led to the filing of this action were made in his capacity as an officer of Font Insurance. See e.g. Docket No. 1, ¶¶ 8-9.

"Under Puerto Rico law, corporations are presumed to be legal entities separate from their officers, directors, and shareholders." Situ v. O'Neill, 124 F. Supp. 3d 34, 50 (D.P.R. 2015) (citing cases). "Thus, corporate directors, officers, and shareholders are generally not liable for the debts of the corporation." Id. "As a rule, this shield will almost never be dismantled." Id. "There are, however, a variety of exceptions to this rule." Id.

"The doctrine of piercing the corporate veil disregards the fiction of corporate entity and limited responsibility." Id. "A plaintiff may pierce the corporate veil by presenting evidence showing that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime." Rivera v. Reed, No. 09-1160 (GAG), 2010 WL 683406, at *2 (D.P.R. Feb. 22, 2010) (citing Colon v. Rinaldi, 2006 WL 3421862 at *6 (D.P.R.2006)). "The party seeking to pierce the corporate veil has the burden of producing strong and robust evidence that the corporate form should be disregarded." Situ, 124 F. Supp. 3d at 50 (citing Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir.1980)).

Here, AGCS failed to plead – let alone present robust evidence showing – that Mr. Font used Font Insurance as a vehicle in order to engage in the kind of conduct

described above which would warrant the piercing of Font Insurance's corporate veil. Therefore, Mr. Font cannot be held liable, in his personal capacity, for acts or omissions that he allegedly made in his capacity as an officer of Font Insurance. Accordingly, all claims set forth by AGCS against Mr. Font in his personal capacity must be dismissed.

## V.   CONCLUSION

The causes of action at issue are predicated on an unforeseeable criminal act. Accordingly, no liability may be imposed against Defendants in this context. In addition, Defendants owe no fiduciary duty to AGCS as they were not its authorized representatives, so any claim for breach of such duty must be dismissed, as well. Finally, all claims set forth by AGCS against Mr. Font in his personal capacity must be dismissed because Mr. Font worked – and continues to work – as an officer of Font Insurance.

**WHEREFORE**, Font Insurance, Inc. and Manuel J. Font-Oronoz request that the Complaint (Docket No. 1) be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of February, 2019.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the instant filing to all CM/ECF participants in this case.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

**O'NEILL & BORGES** <sup>LLC</sup>
*Font Insurance, Inc., and Manuel Font*
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Telephone: 787-764-8181
Fax: 787-753-8944

*s/Omayra Sepulveda-Vega*
Omayra Sepulveda-Vega
USDC No. 231808
omayra.sepulveda@oneillborges.com

*s/Daniel J. Perez-Refojos*
Daniel J. Perez-Refojos
USDC No. 303909
daniel.perez@oneillborges.com

*s/Briseida Torres Reyes*
Briseida Torres Reyes
USDC-PR No. 304005
briseida.torres@oneillborges.com