IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACGS MARINE INSURANCE COMPANY,<br><br>PLAINTIFF<br><br>v.<br><br>FONT INSURANCE, INC., et al.<br><br>DEFENDANTS | CIVIL NO. 18-cv-1951 (GAG) |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**COME NOW** Font Insurance, Inc. ("Font Insurance") and Mr. Manuel F. Font ("Mr. Font" and together with Font Insurance, "Defendants") and oppose the Motion to Compel Discovery Relevant to Plaintiff's Expert Report (the "Motion to Compel") filed by ACGS Marine Insurance Company ("Plaintiff").

**PRELIMINARY STATEMENT**

On July 28, 2020, Plaintiff filed the 22-page Motion to Compel (Docket No. 50) through which it seeks: (a) an assessment performed by "a Florida-based cyber security and digital forensics firm" (id. at p. 2); (b) information that Defendants have certified, in writing, does not exist; and (c) an alleged Font Insurance Inc.'s organizational chart or any other document which identifies the different officers and/or employees at the company. See id. at p. 3. Plaintiff's Motion to Compel misconstrues the background leading to its filing as well as the circumstances which led to the preparation of the forensic assessment that it seeks, the nature of which it conveniently mischaracterizes to try to avoid the inevitable result that such assessment is protected by both the work-product and attorney-client privileges.

00765476; 2

First, Plaintiff contends that it was first informed by Defendants on May 1, 2020 that "a Florida-based cyber security and digital forensics firm had prepared an assessment" (id. at p. 2), the implication being that it had no prior knowledge as to any assessment prepared in connection with the facts on which Plaintiff predicates its claims, let alone Defendants' intention of objecting to its production. Plaintiff then contradicts itself by making reference to its First Request for Production of Documents, which were served upon Defendants on November 15, 2019, as well as to Defendants' responses, which Plaintiff received on **January 15, 2020**. Specifically, Plaintiff's First Request for Production of Documents sought the production "of any investigation undertaken by defendants or on their behalf following notice of the compromised settlement payment." (Docket No. 50-2 at p. 7). And Defendant promptly opposed any such production on the grounds that it was "vague, overly broad and unduly burdensome" and most importantly, because any such information would be "protected under the work product doctrine as well as the attorney-client privilege." (Docket No. 50-4 at p. 13).

Second, but relatedly, the assessment that Plaintiff purportedly seeks (the "Sylint Report"), is in fact a report prepared by Sylint Group, Inc. ("Sylint"), a Florida-based cyber security and digital forensics firm **engaged by the law firm of Shook, Hardy & Bacon LLP** ("Shook"), in its capacity as counsel for Font Insurance on pre-litigation matters, for the sole purpose of assisting Shook in connection with Font Insurance's potential legal obligations to its customers and potential litigations related to the incident. (Docket No. 50-9 at p. 3).[1] **Neither Defendants nor the undersigned counsel have custody or control over the Sylint Report, which was**

---

[1] Prior to the filing of this action, counsel for Plaintiff engaged in conversations with counsel at Shook. Despite this, Plaintiff inexplicably complains of an alleged belated disclosure going as far as to fault Defendants for purportedly concealing Shook's intervention. See Docket No. 50 at p. 19.

**commissioned by Shook to assist in its legal assessment on Font Insurance's potential legal obligations.** Defendants cannot be compelled to produce what they do not have.

Third, Plaintiff contends, on a speculative basis, that "Defendant's response seems to strongly suggest that the assessment was done within the context of an insurance investigation carried out by Integrand Insurance/Beazely [sic.] Insurance, which ultimately denied coverage." (Docket No. 50 at p. 7). Such an assertion is baseless and was in fact clarified to Plaintiff through Defendants' Response to Plaintiff's Discovery Deficiency Letter dated May 1, 2020. There, Defendants explained that "Beazley Insurance did not prepare an assessment of the cybersecurity claim subject of AGCS's Complaint." See Docket No. 50-9 at p. 2. Despite this, Plaintiff continues to insist – incorrectly – that Defendants produce a document that Defendants do not possess.

Fourth, Plaintiff omits to disclose the pertinent background in connection with its request to produce Font Insurance's organizational chart for the year 2017. Defendants explained to Plaintiff that no such chart existed and referred Plaintiff to the Initial Disclosures in the event that they sought information pertaining to individuals with information of the incident underlying Plaintiff's claims. See Docket No. 50-4 at p. 4. Then, during the meet and confer session, Plaintiff altered this request by seeking Font Insurance's telephone directory, which had never been requested. In order to limit the discovery disputes that would ultimately – and unfortunately – be brought to the Court's attention, Defendants agreed to produce it. Despite Defendants' best efforts, and given the COVID-19 pandemic, it was unable to produce the telephone directory prior to the filing of the Motion to Compel. However, earlier today, Defendants produced the directory, such that this request is now moot.

## DISCUSSION

**A. Defendants' properly objected to the production of the Sylint Report and are not in possession or control of any assessment performed by Beazley Insurance.**

On November 15, 2019, Plaintiff submitted to Defendants its First Set of Interrogatories (the "First Interrogatories") and its First Request for Production of Documents (the "First Request for Production"). See Docket No. 50-1 and 50-2.[2] As evinced by a simple reading of the First Interrogatories, Plaintiff did not request that Defendants disclose the existence of any assessment, such as the Sylint Report, prepared by any third-party in connection with the events described in the Complaint. And the single interrogatory referred to in Plaintiff's Motion to Compel does not show otherwise. Specifically, First Interrogatory No. 3 admittedly referred to the disclosure of "actions to remedy the breach and resulting occurrence." (Docket No. 50 at p. 3-4). Defendants responded by detailing all actions taken upon learning of the possible intervention. Because the First Interrogatories did not request the disclosure of any assessment by a third party, contrary to what Plaintiff now implies, Defendants did not provide any such information.

Furthermore, Plaintiff's First Request for Production Nos. 13 and 14 sought the production of "documents" and "communications," respectively, relating to actions taken by Defendants upon discovering that the partial settlement payment made by AGCS in December 2017 was compromised. See id. at p. 4. Neither First Request for Production No. 13 nor 14 made reference to any type of assessment such as the Sylint Report or any report of similar nature. Because it was clear that Plaintiff's First Request for Production No. 13 and 14 was requesting the information

---

[2] Subsequent to the November 15, 2019 deadline, Plaintiff served Defendants with additional discovery requests (Docket No. 50-6) to which Defendants objected because, among other things, had been served after the Court-imposed deadline had elapsed (Docket No. 50-7). See e.g. Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 37 (1st Cir. 2012) (A party who disregards a court order "does so at its own peril."). In doing so, Defendants requested that Plaintiff link the "supplemental" and untimely requests to the First Request for Production (see Docket No. 50-9), but Plaintiff failed to do so.

already produced in connection with the Initial Disclosures and the First Set of Interrogatories, Defendants referred Plaintiff to those responses and production. In doing so, Defendants incorporated by reference its General Objections which, tellingly, included objections to the extent that any of the requests contained in the First Request for Production could be interpreted as seeking the production of privileged information including the work product doctrine and the attorney-client privilege. See Docket No. 50-4 at p. 3.

Through the First Request for Production No. 24, Plaintiff sought, for the first time "a copy of any investigation undertaken by Defendants or on their behalf following notice of the compromised settlement payment." Docket No. 50 at p. 4. Defendants objected to First Request for Production No. 24, on the grounds that, among other things, it sought information protected under the attorney-client and work product privileges, namely, the Sylint Report.

Even though it was in possession of Defendants' Responses to the First Request for Production since January 15, 2020, Plaintiff did not raise any flag in response until Defendants received a purported Discovery Deficiency Letter dated April 9, 2020, in which Plaintiff complained, among other things, that the Response to First Request for Production No. 24 was non-responsive. Defendants responded by further developing the grounds upon which they asserted that the Sylint Report was privileged. See Docket No. 50-8 (Plaintiff's Discovery Deficiency Letter dated April 9, 2020, that is, almost 3 months after receiving Defendants' Responses to the First Request for Production) and Docket No. 50-9 (Defendants' Response to Plaintiff's Discovery Deficiency Letter dated May 1, 2020).

In its Discovery Deficiency Letter, Plaintiff claimed to be "also aware that Beazeley [sic.] Insurance assessed the cyber security claim subject of Plaintiff's complaint. However, no mention is made to this assessment by Beazeley [sic.]." See Docket No. 50-8. Defendants responded by

certifying that they had not received any such assessment by Beazley Insurance (Docket no. 50-9 at p. 2). But, despite this, Plaintiff insists that Defendants produce that assessment.

**B. Sylint was engaged by counsel for Font Insurance, which relied on the Sylint Report in order to provide legal advice to Defendants.**

Defendants have repeatedly attempted to explain to Plaintiff the context leading to the preparation of the Sylint Report, to no avail. Accordingly, and for the Court's benefit, Defendants certify that, following the incident described in the Complaint, Font Insurance engaged Shook, in anticipation of potential adverse litigation, in order to determine whether the respective data-security incident had triggered any applicable privacy or data-security regulations, such as Puerto Rico's Breach Notification Law, 10 L.P.R. St § 4051 *et seq*., and to ensure that Defendant Font Insurance complied with the requirements of such regulations (e.g. providing notification to any individuals whose personally identifiable information had been accessed as a result of the incident). See Docket No. 50-9 at p. 3. As part of that engagement, Shook, in its capacity as counsel for Font Insurance on pre-litigation matters, engaged Sylint "for the sole purpose of assisting Shook in connection with Font Insurance's potential legal obligations." Id. This background was reiterated during the parties' meet and confer call. To be clear, neither Shook nor Sylint were engaged for purposes of determining coverage of Defendants under any insurance policy issued by Beazley Insurance, Integrand Insurance, or any other insurance agency. In addition, neither the undersigned attorneys nor Defendants have in their possession a copy of the Sylint Report, which was commissioned by Shook and is kept by Shook to this day.

It is clear from the foregoing that (a) Font Insurance engaged the services of Shook to provide legal advice to Font Insurance in connection with the incident described in the Complaint and in anticipation of possible litigation; (b) Shook, in its capacity as legal counsel to Font Insurance engaged the services of Sylint, a third-party forensics consultant, as an indispensable

mean to provide such legal advice to Font Insurance; (c) Sylint issued the Sylint Report in which Shook relied in order to render legal advice to Font Insurance in connection with the possibility of liability. Neither the Sylint Report nor any of its contents were disclosed to any employee of Font Insurance, including Defendant Manuel Font. And, to be clear, the Sylint Report was not issued "within the context of Beazeley [sic.] Insurance's coverage determination" (Docket no. 50 at p. 20) as Plaintiff incorrectly asserts. In fact, the Sylint Report has no relation whatsoever to any coverage issue, but rather, to the legal advice provided by Shook to Defendants.

**C. The Sylint Report is protected by the attorney-client and work product privileges.**

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," and as a privilege designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." United States v. Zolin, 491 U.S. 554, 562 (1989).

Courts within this circuit have held that "the presence of third-party advisors does not prevent application of the attorney-client privilege in limited circumstances." See e.g. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 386 F. Supp. 3d 175, 185-86 (D.P.R. 2019). In order for this exception to apply, three separate elements must be met. Columbia Data Prod., Inc. v. Autonomy Corp., No. CIV.A. 11-12077-NMG, 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012) (citing Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002)).

First, "the third-party communications must be necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Columbia Data Prods., 2012 WL 6212898 at *15 (D. Mass. Dec. 12, 2012) (internal quotations and citations omitted). Second, "the third party's communication must serve to translate

information between the client and the attorney." Id. (internal quotations and citations omitted). Third, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." Id. (internal quotations and citations omitted).

Here, all three elements are met. To this end, Sylint was engaged by Shook – which, as a law firm, lacks Sylint's digital forensics expertise – in order to provide an assessment relating to the incident described in the Complaint. Shook relied on the Sylint Report in order to render legal advice to Font Insurance in connection with this incident. Lacking such expertise made it indispensable for Shook that Sylint, through the Sylint Report, translate the events described in the Complaint in order for Shook to render adequate legal counsel to Font Insurance. Lastly, Shook consulted Sylint solely for a legal purpose. Given this context, it follows that the Sylint Report is shielded from production under the attorney-client privilege.[3]

In turn, the work product privilege shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "From the outset, the focus of work product protection has been on materials

---

[3] This is fully consistent with a line of cases in which courts have applied the attorney-client privilege to communications and reports between company employees and non-lawyer investigators who, like Sylint, rendered assessments at the direction of counsel. In re Kellogg Brown & Root, Inc., 756 F.3d 754, 758, 94 Fed. R. Evid. Serv. 1078, 94 Fed. R. Evid. Serv. 1129 (D.C. Cir. 2014) (privilege applied to communications between company employees and non-attorney investigators acting at the direction of counsel; "[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege."); Farzan v. Wells Fargo Bank, 2012 WL 6763570, *1–2 (S.D. N.Y. 2012) (where investigation was conducted by nonattorney "EEO Consultant" under the supervision of the bank's legal department, conversations with bank employees were "plainly protected by the attorney-client privilege"); Gucci America, Inc. v. Guess?, Inc., 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (communications with nonlawyer conducting investigation at the direction of in-house counsel and in coordination with outside counsel were privileged; "Factual investigations conducted by an agent of the attorney, such as 'gathering statements from employees, clearly fall within the attorney-client rubric.'"); Wagoner v. Pfizer, Inc., 2008 WL 821952, *4 (D. Kan. 2008) (where nonattorney took notes during interviews conducted by in-house counsel and then took notes during subsequent interviews conducted by the nonattorney at in-house counsel's direction, the notes were protected by the attorney-client privilege); Carter v. Cornell University, 173 F.R.D. 92, 94, 119 Ed. Law Rep. 505, 37 Fed. R. Serv. 3d 1257 (S.D. N.Y. 1997) (where Associate Dean conducted an investigation "at the request of counsel and for the exclusive use of counsel in rendering legal representation," communications with persons she interviewed were privileged).

prepared for use in litigation, whether the litigation was underway or merely anticipated." U.S. v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29 (1st Cir. 2009). To this end, "the literal language of [Rule 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." Id. (citing Federal Trade Commission v. Grolier Inc., 462 U.S. 19, 25 (1983)). Again, the Sylint Report was issued at Shook's behest in order for Shook to advise Font Insurance of its potential legal obligations related to the access of personally identifiable information contained with Defendant's computer system as well as the potential for litigation arising therefrom. Accordingly, the Sylint Report is also protected by the work-product privilege.

Federal courts in analogous contexts consistently deny motions to compel seeking the production of documents near-identical to those sought by Plaintiff here, on exactly the same grounds as those raised by Defendants.

For example, in the case of In re Experian Data Breach Litig., No. SACV1501592AGDFMX, 2017 WL 4325583, at *1 (C.D. Cal. May 18, 2017), the plaintiffs filed a complaint against Experian Information Solutions Inc., Experian Services Corporation, Experian Holdings Inc., and Experian North America Inc. (collectively, "Experian") after their personally identifiable information was allegedly compromised following a data breach. Id. The facts of that case are as follows: "[i]n September 2015, Experian learned that one of its systems was breached by an unauthorized third party. Experian immediately retained Jones Day, its outside litigation counsel, for legal advice regarding the attack. Jones Day then hired Mandiant to conduct an expert report analysis of the attack. And according to Experian, the only purpose of that report is to help Jones Day provide legal advice to Experian regarding the attack." Id. at *2. On October 2, 2015, the plaintiffs filed their complaint and, during the course of discovery, moved the court to compel

the production of the Mandiant report in response to which Experian objected by raising the work product and attorney-client privilege. Id. Ultimately, the court held that "Mandiant conducted the investigation and prepared its report for Jones Day in anticipation of litigation, even if that wasn't Mandiant's only purpose." Id. For that reason, the court denied the plaintiffs' motion to compel.

Similarly, in Genesco Inc. v. Visa, Inc., No. 3:13-CV-00202, 2015 WL 13376284 (M.D. Tenn. Mar. 25, 2015), the defendant moved to compel discovery related to remediation measures performed by IBM, a third party company that the plaintiff had retained "to provide consulting and technical services so as to assist counsel in rendering legal advice to [the plaintiff]." Id. at *1. The court ultimately held that, despite the fact that "the information sought in [the defendants'] motion to compel [was] relevant and probative," in light of the scope of IBM's engagement by the plaintiff, that information was protected by the attorney-client privilege. Id. (citing United States v. Nobles, 442 U.S. 225 (1975) (attorney client privilege attaches to retained investigators). In doing so, the court held that "the expert consultant's materials are not subject to waiver under Fed. R. Civ. P. 26(b)(4)(D)." Id.

This Court should follow the reasoning behind the foregoing rulings and correspondingly deny Plaintiff's Motion to Compel on the basis that the Sylint Report is protected under the work-product doctrine and attorney-client privilege. See e.g. Textron, 577 F.3d at 30 (noting that "work done in anticipation of or for trial is protected."); Geller v. North Shore Long Island Jewish Health Sys., No. 10-170, 2011 WL 5507572, at *3 (E.D.N.Y. Nov. 9, 2011) ("the attorney work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared because of the prospect of litigation.") (citation and internal quotation marks omitted); see also Fed.R.Civ.P. 26(b)(1) (pursuant to which a party may only obtain discovery of "nonprivileged matters … relevant to any party's claim or defense.").

**D. The cases cited by Plaintiff in support of its Motion to Compel are inapposite in the context of this case.**

In the Motion to Compel, Plaintiff cites to a litany of cases all of which are clearly distinguishable from the facts of this case. For example, in support of its misplaced argument that the work product privilege is inapplicable to this case, Plaintiff cites to **(a)** Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Co., 123 F.R.D. 198, 201 (M.D.N.C. 1988); **(b)** Weitzman v. Blazing Pedals, Inc.,151 F.R.D. 125, 126 (D. Colo. 1993); **(c)** Mattison v. Imbesi, 1998 WL 720061, at *2 (E.D. Pa. 1998); **(d)** Connecticut Indem. Co. v. Carrier Haulers, Inc., 197 F.R.D. 564, 571 (W.D.N.C. 2000); **(e)** Harper v. Auto Owners Ins. Co., 138 F.R.D. 655, 661 (S.D. Ind. 1991); **(f)** Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co., 160 F.R.D. 83, 85 (S.D. W. Va. 1994); **(g)** Mission Nat. Ins. Co. v. Lilly, 112 F.R.D. 160 (D. Minn. 1986); **(h)** Carver v. Allstate Ins. Co., 94 F.R.D. 131 (S.D.Ga. 1982); **(i)** Fine v. Bellafonte Underwriters Ins. Co., 91 F.R.D. 420 (S.D.N.Y. 1981); **(j)** APL Corp. v. Aetna Casualty & Surety Co., 91 F.R.D. 10, 18 (D.Md. 1980); **(k)** Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co., 61 F.R.D. 115, 118 (N.D. Ga. 1972); **(l)** Ring v. Commercial Union Ins. Co., 159 F.R.D. 653, 656 (M.D.N.C. 1995); **(m)** Garvey v. Nat'l Grange Mut. Ins. Co., 167 F.R.D. 391, 393-94 (E.D. Pa. 1996); and **(n)** Nicklasch v. JLG Industries, Inc., 193 F.R.D. 568 (S.D. Ind. 1999).[4]

---

[4] The remaining cases cited in Section B of the Motion to Compel pertain to general principles governing the work product doctrine and how such a privilege does not cover documents prepared in the ordinary course of business. See Gucci America, Inc. v. Guess, Inc., 271 F.R.D. 58 (S.D. N.Y. 2010); State of Maine v. U.S. Dept. of Interior, 298 F.3d 60 (1st Cir. 2002); Textron Inc., 577 F.3d 21; Diversified Industries, Inc. v. Meredith, 572 F.2d 596 (8th Cir. 1977); Binks Manufacturing Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1118-19 (7th Cir.1983); Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992); In re Grand Jury Subpoenas, 318 F.3d 379 (2d Cir. 2003). To the extent that Defendants have established that the Sylint Report was clearly not prepared in the ordinary course of business, but rather as an assessment relating to legal counsel to be provided by Shook to Defendants in anticipation of litigation, then those cases are irrelevant to this discovery dispute. In like manner, the cases cited in Section C of the Motion to Compel relate to general principles applicable to the attorney-client privilege and need not be distinguished herein. See State of Maine v. U.S. Dept. of Interior, 298 F.3d 60 (1st Cir. 2002); Upjohn Co. v. United States, 449 U.S. 383, 391 (1981); Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico, No. CV 09-1111 (SEC), 2012 WL 13172556 (D.P.R. Dec. 10, 2012); Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012); United States v. Bisanti, 414 F.3d 168, 171 (1st Cir. 2005); United States v. United Shoe Mach.

Unfortunately for Plaintiff, all these cases involve circumstances in which one of the parties moved to compel reports prepared by insurance companies in connection with coverage assessments or insurance claim files. This is not at issue here. Accordingly, Plaintiff's reliance on all such cases is misplaced. Indeed, the inquiry here is whether the Sylint Report, which was rendered by a third-party forensics consultant at counsel for Defendants' behest in order for the latter to render legal advice to Defendants is protected by the attorney-client and work product privileges. Defendants understand that the Sylint Report is in fact privileged and have cited to on-point case law to those effects.

**E. Defendants did not waive any privilege in connection with the Sylint Report.**

In the Motion to Compel, Plaintiff includes a section titled "Waiver of privilege." See Docket No. 50 at p. 17. There, Plaintiff merely cites to cases and a treatise purportedly related to waiver of privileges, in general. Id. However, Plaintiff fails to mention – much less elaborate – how Defendants waived any privilege asserted during the course of this case. On this basis, Plaintiff waived any argument suggesting that Defendants, in turn, waived any privilege. Therefore, the Court should not consider this argument. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (concluding that "[j]udges are not mind-readers," and thus, "arguments confusingly constructed and lacking in coherence" are appropriately waived); see also United States v. Zannino, 895 F.2d 1 (1st Cir. 1990) (holding that undeveloped arguments are considered waived).

At any rate, Defendants have not waived any privilege and, in that regard, timely raised objections predicated on both the attorney-client and the work-product privileges in response to all discovery requests from Plaintiff that Defendants understood sought the production of

---

Corp., 89F. Supp. 357, 358-59 (D. Mass. 1950); Moreno Rivera v. DHL Global Forwarding, 272 F.R.D. 50 (D.P.R. 2011); and United States v. Bay State Ambulance and Hosp. Rental Serv., Inc., 874 F.2d 20, 27-28 (1st Cir. 1989).

privileged information. Similarly, Defendants have not even seen, let alone produced the Sylint Report to any third party which would entail waiver. See In re Keeper of Records, 348 F.3d at 23 (finding it "that any previously privileged information actually revealed [to third parties] lost any veneer of privilege"). Thus, in the event that the Court were to understand that Plaintiff developed any waiver argument – which Defendants contend it is not the case – Defendants requires that any relief predicated on any such argument be denied.

On a related note, while Defendants did not provide Plaintiff with a formal privilege log, Defendants did identify the single document over which they are asserting a privilege in this case, to wit, the Sylint Report. To that end, in Defendants' Response to Plaintiff's Discovery Deficiency Letter dated May 1, 2020, (a) Defendants clearly identified the Sylint Report as being the only document over which they were asserting a privilege; (b) conceded that they had not provided a privilege log; (c) requested that plaintiff accept Defendants' Response to Plaintiff's Discovery Deficiency Letter as its privilege log; (d) to which Plaintiff did not oppose and thus implicitly accepted as its privilege log. See Docket No. 50-9.

Moreover, Plaintiff has failed to cite to any legal provision that provides for waiver of privileges where no privilege log has been provided. In fact, other courts within the First Circuit have found the exact opposite. See e.g. Pub. Serv. Co. of NH v. Portland Nat. Gas, 218 F.R.D. 361, 363 (D.N.H. 2003) (finding that "to justify a waiver finding when the responding party invokes a privilege but initially fails to produce a privilege log with its discovery responses is unnecessarily harsh.").

**F. The reformatting of Mr. Font's computer was done as part of an effort to mitigate any further damages in connection with the incident object of Plaintiff's claims.**

As explained in detail to Plaintiff, in the immediate days after becoming aware that his business computer could have been subject to intrusion by a third-party, Mr. Font requested that

the IT personnel delete the contents of that computer and reformat the same as part of its efforts to mitigate any potential risk. The IT personnel proceeded accordingly. At that time (December of 2017), Mr. Font did not suspect, let alone foresee, that this litigation adverse to Font Insurance would ensue. Instead, this was done as part of Font Insurance's diligent efforts aimed at limiting any risks stemming from such an incident. It was not until several months later (on or around March of 2018) that Defendants anticipated possible litigations and requested legal assistance from Shook.

**G. Defendants are not in custody or control of any report or assessment made by Beazley Insurance of Integrand Insurance.**

Plaintiff claims to have made "incessant requests as to the role of Beazeley [sic] Insurance in the referenced claim." Docket No. 50 at p. 20. With respect to this point, Plaintiff claims to have had knowledge of Beazley Insurance was purportedly handling "this claim." Id. Tellingly, and despite having such knowledge beforehand, Plaintiff did not specifically mention Beazley Insurance in any of their discovery requests. Had Plaintiff done so, perhaps it would have known by January 15, 2020, that Beazley Insurance never provided Defendants with any assessment report in connection with its coverage determination.

Notably, Plaintiff mentioned the name Beazley Insurance, for the first time, in its Discovery Deficiency Letter dated April 9, 2020, through which they requested the production of an "assessment [purportedly made] by Beazeley [sic]." Docket No. 50-8 at p. 2. Defendants responded by certifying not having any assessment made by Beazley Insurance. See Docket No. 50-9 at p. 2. Despite this crystal-clear representation, Plaintiff continues to seek the production of a purported assessment supposedly rendered by Beazley Insurance. To the best of Defendants' knowledge, no such document exists and thus, Defendants are unable to produce it.

**H. Defendants have produced all the documents responsive to Plaintiff's requests but for the Sylint Report, which is privileged.**

Together with Defendants' Initial Disclosures, Defendants produced all documents in its possession and control relevant to the allegations of Plaintiff's Complaint, including: (1) Font Insurance Office 365 Platform Email Security Features; (2) Font Security and Compliance Manual; (3) Microsoft A defense-in-depth approach to protecting email with Microsoft Exchange Online Protection (EOP); (4) Microsoft Security and Compliance: Customer Controls for Information Protection in Office 365; (5) Microsoft Protecting Data and Privacy in the Cloud (Office 365); (6) Privacy in Microsoft Cloud Services (Office 365); (7) Font Insurance Internal Policy on Information Security (Section 5.1); (8); Font Insurance Internal Policy on Use of Email (Section 5.5); (9) Font Insurance Internal Policy on Email Retention (Section 5.6); (10) Font Insurance Internal Policy on Use of Internet (Section 5.7); (11) Font Insurance Internal Policy on Remote Access Security (Section 5.8); (12) Font Insurance Internal Policy on Secure Password (Section 5.9); (13) Correspondence directed at the Secretary of the Puerto Rico Consumer Affairs Department; (14) Email Correspondence relating to urgent stop wire payment request; and (15) Policy No. 135 001003260-01-000000 issued in its favor by AIG Insurance Company - Puerto Rico on January 11, 2017 as extended through Policy No. 135 001003260-02-000000 issued in its favor by AIG Insurance Company - Puerto Rico on January 12, 2018.

Defendants provided additional information in response to Plaintiff's written discovery requests. All these documents and information allow Plaintiff to understand the type of email protections that Font Insurance had at the time of the alleged incident, the policies in place governing the use of emails, the actions taken by Defendants subsequent to such incident, the insurance policy applicable to this case, among others. To date, Defendants have no additional non-privileged information.

**I. Plaintiff's request relating to Font Insurance's telephone inventory is moot.**

As stated elsewhere in this opposition, earlier today, Defendants produced Font Insurance's telephone directory. Accordingly, Plaintiff's request that Defendants produce such directory is now moot.

## CONCLUSION

The Sylint Report was prepared at counsel for Font Insurance's behest as an indispensable mean to provide legal advice to Font Insurance, as opposed to in connection with any coverage assessment claim as Plaintiff incorrectly argues in its Motion to Compel. Accordingly, the Sylint Report is shielded from discovery pursuant to the attorney-client and work product privileges. Moreover, the Sylint Report continues to be in possession of Shook and neither Defendants nor the undersigned attorneys have possession of it. In addition, and to the extent that Plaintiff's Motion to Compel is predicated on the purported existence of a coverage assessment that Defendants have never seen, much less have in its possession or control, Plaintiff's request should be denied. Relatedly, Defendants have produced all documents in their custody and control, but for the privileged Sylint Report. Finally, Plaintiff's request for the production of Font Insurance's telephone inventory is moot.

**WHEREFORE**, Defendants request that the Court (1) strike Plaintiff's Motion to Compel on the basis that it is non-compliant with L. Civ. R. 7(d) or, in the alternative, that (2) it deny the Motion to Compel insofar as (A) the Sylint Report is protected from production by both the attorney-client and work product privileges; (B) no assessment by Beazley Insurance was provided to Defendants at any point prior to and subsequent to the filing of this action or at any point thereafter; (C) Mr. Font's computer was reformatted just days after the accident as a remedial

measure by Font Insurance such that the information was lost to Plaintiff and Defendants equally; and (D) the information relating to Font Insurance's telephone inventory is moot.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of August, 2020.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system.

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Omayra Sepulveda-Vega*
Omayra Sepulveda-Vega
USDC No. 231808
omayra.sepulveda@oneillborges.com

*s/Daniel J. Perez-Refojos*
Daniel J. Perez-Refojos
USDC No.303909
daniel.perez@oneillborges.com