IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY, <br><br> PLAINTIFF <br><br> v. <br><br> FONT INSURANCE, INC., et al. <br><br> DEFENDANTS | CIVIL NO. 18-cv-1951 (GAG) |

### SUR-REPLY[1]

**COME NOW** Font Insurance, Inc. ("Font Insurance") and Mr. Manuel F. Font ("Mr. Font" and together with Font Insurance, "Defendants") and, for the reasons below, reiterate their request that the Court deny the Motion to Compel Discovery Relevant to Plaintiff's Expert Report (the "Motion to Compel") filed by AGCS Marine Insurance Company ("Plaintiff").[2]

1. First, rather than addressing the arguments raised by Defendants in the Opposition, Plaintiff continues to stubbornly insist that Defendants have improperly concealed the existence of the Sylint Report. See Docket No. 59 at pp. 1-2. In doing so, Plaintiff refuses to acknowledge that, on January 15, 2020, Defendants objected to First Request for Production No. 24 on the grounds that, among other things, it sought information protected under the attorney-client and work product privileges. See Docket No. 55 at pp. 4-5. Plaintiff did not raise any flag in response until April 9, 2020 (i.e. 3 months later), when it claimed that Defendants' response to First Request

---

[1] Any term not expressly defined herein shall be construed as having the same meaning given to in the Opposition at Docket No. 55.

[2] In the Reply, Plaintiff appears to have abandoned its request for any assessment made by Beazley Insurance, which Defendants have certified at least twice to have never received. In addition, Plaintiff appears to concede that the request for the production of the telephone inventory is moot.

for Production No. 24 was non-responsive. Defendants responded on May 1, 2020, and identified the Sylint Report as being the only document over which they were asserting a privilege. In this context, it is impossible to understand Plaintiff's baseless contention that Defendants have gone to great lengths to "conceal" the existence of the Sylint Report.

2. Second, the Reply fails to discuss how the fact that Mr. Font's computer was reformatted "makes the Sylint Report discoverable." On this basis alone, the Court should disregard this argument. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (concluding that "[j]udges are not mind-readers," and thus, "arguments confusingly constructed and lacking in coherence" are appropriately waived); see also United States v. Zannino, 895 F.2d 1 (1st Cir. 1990) (holding that undeveloped arguments are considered waived).

3. The fact remains that, as thoroughly discussed by Defendants in their Opposition, federal courts in analogous contexts consistently deny motions to compel seeking the production of documents near-identical to those sought by Plaintiff here, on exactly the same grounds as those raised by Defendants. See Docket No. 55 at pp. 9-10. Plaintiff made no attempt at distinguishing these cases or otherwise discuss how this Court should ignore those relevant holdings.

4. Third, the Reply fails to address Defendants' argument discussing how, through the Response to Plaintiff's Discovery Deficiency Letter dated May 1, 2020, (a) Defendants clearly identified the Sylint Report as being the only document over which they were asserting a privilege; (b) conceded that they had not provided a privilege log; (c) requested that plaintiff accept Defendants' Response to Plaintiff's Discovery Deficiency Letter as its privilege log; (d) to which Plaintiff did not oppose and thus implicitly accepted as its privilege log. See Docket No. 55 at pp. 12-13.

5. Fourth, but relatedly, Plaintiff fails to point to any authority in support of its baseless argument that Defendants waived any privilege by failing to produce a privilege log, even when pointed to other cases where courts within the First Circuit have found the exact opposite. See id. at p. 13 (citing Pub. Serv. Co. of NH v. Portland Nat. Gas, 218 F.R.D. 361, 363 (D.N.H. 2003) (finding that "to justify a waiver finding when the responding party invokes a privilege but initially fails to produce a privilege log with its discovery responses is unnecessarily harsh.")).

6. Fifth, the Reply fails to acknowledge the certification that neither Defendants nor the undersigned counsel had custody or control over the Sylint Report and that, even assuming that the Sylint Report was not privileged – which Defendants strongly oppose for the reasons discussed in the Opposition and elsewhere in this Sur-Reply – Defendants cannot produce what they do not have or present it to the Court for an *in camera* inspection.[3]

7. Sixth, nowhere in the Opposition did Defendants imply that the Sylint Report was prepared in the ordinary course of business as Plaintiff misleadingly states in its Reply. See Docket No. 59 at p. 4.

8. Rather, Defendants discussed how (a) Font Insurance engaged the services of Shook to provide legal advice to Font Insurance in connection with the incident described in the Complaint and **in anticipation of possible litigation**; (b) Shook, in its capacity as legal counsel to Font Insurance engaged the services of Sylint, a third-party forensics consultant, as an indispensable mean to provide such legal advice to Font Insurance; (c) Sylint issued the Sylint

---

[3] In fact, Plaintiff's latest request – made for the first time in the Reply – that the Court conduct an *in camera* inspection of the Sylint Report and Shook's legal opinion goes to show how Plaintiff is desperately grasping at straws. In this regard, at no time during the course of this action has Plaintiff requested the production of any legal opinion rendered by Shook, which was engaged to provide legal counsel in anticipation of possible litigation and as such, any such opinion is also protected by the attorney-client privilege. Plaintiff failed to discuss – let alone establish – how this would not be the case. See e.g. F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000) (stressing the legal importance of the attorney-client privilege).

Report in which Shook relied in order to render legal advice to Font Insurance in connection with the possibility of liability. See Docket No. 55 at pp. 6-7.[4]

9. Seventh, nowhere in the Opposition did Defendants imply "that the destruction of information by co-defendant Font would not affect the ability of an expert to perform a cyber security analysis under the same conditions as the Sylint Report" or "that the same conditions exist today at Defendants' operations and are the same as the ones that existed when the Sylint Report was prepared." See Docket No. 59 at pp. 4-5. Such assertions are misleading and, perhaps for that reason, Plaintiff fails to point out to any portion of the Opposition where Defendants state as much.

10. To be clear, what Defendants stated in the Opposition was that they have produced all documents responsive to Plaintiff's requests but for the Sylint Report, which is privileged and not in Defendants' custody or control. See Docket No. 55 at p. 15. All these documents and information, in turn, should allow Plaintiff to understand the type of email protections that Font Insurance had at the time of the alleged incident, the policies in place governing the use of emails, the actions taken by Defendants subsequent to such incident, the insurance policy applicable to this case, among others. See id.

11. Defendants did not decide to file this action; deny any wrongdoing; reiterate their argument that the alleged damages described in the Complaint stemmed from an unforeseeable criminal act as to which no liability can attach; and will not commission any new cyber-security report, for Plaintiff's benefit, at their own expense. And Plaintiff fails to justify how imposing such a sanction upon Defendants would be appropriate in the context of this case.

---

[4] Because it is clear that the Sylint Report was not prepared during the ordinary course of business, and that Shook's legal advice was not rendered during the ordinary course of business, the case law cited by Plaintiff in its Reply in support of the argument that documents prepared during the ordinary course of business are discoverable is inapposite. See Docket No. 59 at FN. 2.

12. Lastly, Plaintiff attached an expert report which purports to state that the discovery responses provided by Defendants are allegedly insufficient. Plaintiff's purported expert is not versed in the law, and has no legal training that would allow him to opine on that subject which, in any event, is something for the Court to rule upon. What is more, the purported expert report attached to the Reply is not even sworn. On this basis, the Court should disregard both the purported expert report and any references made thereto. See e.g. Casillas v. Vida, No. CV 16-2564 (PAD), 2018 WL 4057733, at *1 (D.P.R. Aug. 23, 2018) (refusing to consider unsworn and unauthenticated expert report in the context of Fed.R.Civ.P. 56).

**WHEREFORE**, Defendants request that the Court deny Plaintiff's Motion to Compel.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of August, 2020.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system.

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Omayra Sepulveda-Vega*
Omayra Sepulveda-Vega
USDC No. 231808
omayra.sepulveda@oneillborges.com

*s/Daniel J. Perez-Refojos*
Daniel J. Perez-Refojos
USDC 303909
daniel.perez@oneillborges.com